UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARTHA HENDERSON and PERRY MERKEL,<br><br>     Plaintiffs,<br><br>v.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, ANTHEM INSURANCE COMPANIES, INC, ANTHEM LIFE INSURANCE COMPANY OF CALIFORNIA, CHEVRON CORPORATION, and JOHN DOE CORPORATIONS I-X, unknown individuals or business entities,<br><br>     Defendants. | Case No. 1:22-CV-00164-JCG<br><br>**Opinion and Order** |

Before the Court are motions to dismiss filed by Defendants Anthem

Insurance Companies, Inc., Anthem Blue Cross Life and Health Insurance

Company, and Anthem Life Insurance Company of California (collectively,

"Anthem") and Defendant Chevron Corporation ("Chevron"). Anthem's Mot.

Dismiss Pls.' Am. Compl. ("Anthem's Motion to Dismiss" or "Anthem's Mot.

Dismiss") (Dkt. 15); Chevron's Mot. Dismiss Pls.' Am. Compl. ("Chevron's

Motion to Dismiss" or "Chevron's Mot. Dismiss") (Dkt. 19). Also before the

Court is the motion to strike extrinsic evidence, or alternatively, to allow time to

conduct relevant discovery pursuant to Federal Rules of Civil Procedure 12(d) and

56(d) ("Plaintiffs' Motion to Strike") filed by Plaintiffs Martha Henderson

("Henderson") and Perry Merkel ("Merkel") (collectively, "Plaintiffs").  Pls.'

Resp. Opp'n Anthem's Mot. Dismiss at 5–8 (Dkt. 17).  Plaintiffs filed responses to

both motions to dismiss.  Pls.' Resp. Opp'n Anthem's Mot. Dismiss; Pls.' Resp.

Opp'n Chevron's Mot. Dismiss (Dkt. 34).  Anthem and Chevron filed replies to the

motions to dismiss and Anthem filed a response to Plaintiffs' motion to strike.

Anthem's Reply Supp. Mot. Dismiss ("Anthem's Reply") (Dkt. 33); Chevron's

Reply Mem. Supp. Mot. Dismiss Pls.' Am. Compl. ("Chevron's Reply") (Dkt. 39).

Also before the Court are Plaintiffs' Motion for Summary Judgment and

Attorneys' Fees and Costs ("Plaintiffs' Motion for Summary Judgment") and

Anthem's Cross-Motion for Summary Judgment.  Pls.' Mot. Summary J.

Attorneys' Fees Costs ("Pls.' Mot. Summary J.") (Dkt. 53); Anthem's Cross-Mot.

Summary J. (Dkt. 62).  Chevron and Anthem filed responses to Plaintiffs' Motion

for Summary Judgment.  Chevron's Resp. Opp'n Pls.' Mot. Summary J. (Dkt. 60);

Anthem's Resp. Pls.' Mot. Summary J. Attorneys' Fees Cost Cross-Mot. Summary

J. (Dkt. 61).  Plaintiffs filed Plaintiffs' Reply in Support of Motion for Summary

Judgment and Attorneys' Fees and Costs Against Chevron and Plaintiffs'

Consolidated Reply in Support of Plaintiffs' Motion for Summary Judgment and in

Opposition to Anthem's Cross-Motion for Summary Judgment.  Pls.' Reply Supp.

ORDER - 2

Mot. Summary J. Attorneys' Fees Costs Against Chevron (Dkt. 63); Pls.' Consol.
Reply Supp. Pls.' Mot. Summary J. Opp'n Anthem's Cross-Mot. Summary J. (Dkt.
64).  Anthem filed Anthem's Reply in Support of their Cross-Motion for Summary
Judgment.  Anthem's Reply Supp. Cross-Mot. Summary J. (Dkt. 65).

    For the reasons discussed below, the Court grants Anthem's Motion to
Dismiss and Chevron's Motion to Dismiss and denies Plaintiffs' Motion to Strike,
Plaintiffs' Motion for Summary Judgment and Attorneys' Fees and Costs, and
Anthem's Cross-Motion for Summary Judgment.

## ISSUES PRESENTED

I.    Whether to strike the declaration and exhibits submitted by Anthem in
support of Anthem's Motion to Dismiss or permit additional discovery;

II.    Whether Plaintiffs have Article III standing to bring claims against
Anthem and Chevron under 29 U.S.C. § 1132(a) and (c);

III.    Whether Anthem is a proper defendant for Plaintiffs' 29 U.S.C. § 1132(a)
and (c) claim;

IV.    Whether Plaintiffs made a written request to produce documents under 29
U.S.C. § 1024(b)(4) to Chevron and whether Chevron has met its
production obligations under that provision; and

V.    Whether Plaintiffs are entitled to attorneys' fees, costs, and statutory
penalties.

ORDER - 3

## BACKGROUND

Henderson is an inactive employee of Chevron.  Am. Compl. at 2, 3 (Dkt. 12).  In 2010, Henderson became medically disabled and unable to work.  Id. at 3.  Henderson is a participant and beneficiary of the Chevron Medical PPO Plan ("the Plan") for medical insurance coverage and receives long-term disability benefits.  Id. at 2, 3; Decl. Sonia Salazar Supp. Anthem's Mot. Dismiss ("Salazar Declaration" or "Salazar Decl.") at 2 (Dkt. 15-1).  She receives additional medical benefits through Medicare.  Am. Comp. at 3; Salazar Decl. at 2.  Merkel is Henderson's spouse/dependent and is a beneficiary of the Plan.  Am. Compl. at 2, 3–4.  Merkel is also eligible for and receives Medicare.  Id. at 3–4.  Under the terms of the Plan, Medicare is the "primary payer" for Henderson's and Merkel's medical claims.  Id. at 4.  Henderson and Merkel are eligible and remain enrolled under the Plan as a secondary payer.  Id.

On or about January 1, 2017, Anthem became an administrator for the Plan.  Id.  Prior to that date, the Plan was administered by entities other than Anthem.  Id.

Beginning in December 2018, Henderson began receiving adverse claims decisions from Anthem.  Id.  The following January, Merkel began receiving adverse claims decisions and Anthem removed Merkel from the Plan.  Id.  Merkel and Anthem engaged in communications and negotiations that resulted in Anthem returning Merkel to coverage under the Plan.  Id.

ORDER - 4

In each of the contested claims, Henderson's and Merkel's medical providers submitted claims to Medicare as the primary coverage provider.  Id. Amounts remaining after Medicare paid its portion of the medical costs were submitted to Anthem as the secondary insurer.  Id. at 5.  Anthem denied payment of the claims, in part or in full, determining that the providers were "out-of-network" or that the costs exceeded price allowances.  Id.  Since January 2019, Henderson and Merkel have been in communication with Anthem regarding the administration of their claims.  Id. at 6.

Henderson and Merkel filed a claim with the United States Department of Labor Employee Benefits Security Administration ("Labor").  Id.  Labor issued at least four demand letters to Anthem on behalf of Henderson and Merkel between March and November 2020.  Id.  The letters identified eight incorrectly processed claims on behalf of Merkel from Dustin Portela of Treasure Valley Dermatology, Amber Simonson and Russell Gray of ADA Vision Center, and Cynthia Tremblay of St. Luke's Regional Medical Center.  Id.  In its January 20, 2021 response, Anthem confirmed that Dustin Portela, Amber Simonson, Russell Gray, Cynthia Tremblay, and St. Luke's Regional Medical Center were in-network under the Plan, but Treasure Valley Dermatology and ADA Vision Center were out-of-network.  Id. at 7.  Anthem denied Merkel's appeal.  Id.

Labor's letters identified multiple claims that had been processed improperly on behalf of Henderson from Melanie Michaels of Mind, Body, Soul Physical Therapy, Mariya Ostermiller of Treasure Valley Dermatology, and Benjamin Hom and Michael Modica of Intermountain Medical Imaging.  Id. at 6.  In its November 19, 2020 response, Anthem acknowledged that Michael Modica, Intermountain Medical Imaging, Benjamin Hom, Mariya Ostermiller, and Melanie Michaels were in-network under the Plan, but Treasure Valley Dermatology and Mind, Body, Soul Physical Therapy were out-of-network.  Id. at 7.  Anthem advised Henderson of its decision to reprocess and overturn some, but not all, coverage decisions.  Id.

Henderson retained legal counsel to pursue a second appeal.  Id. at 8. Henderson requested an explanation of benefits to determine how claims were being coded.  Id.  Through a letter of March 10, 2021, Anthem notified Henderson that errors in processing were the result of individual providers submitting incorrect tax identification numbers.  Id.  Anthem claimed that despite being designated as out-of-network, the claims were processed as in-network.  Id.

In March 2021, Henderson and Merkel jointly requested a voluntary second level appeal.  Id.  They also requested copies of Plan documents and Henderson's and Merkel's respective claim files pursuant to 29 U.S.C. § 1024 and 29 C.F.R. § 2520.104b-1(a).  Id.  Henderson received a response dated April 12, 2021 referencing Anthem's prior communications.  Id.  Merkel received a response

dated April 29, 2021 denying his appeal.  Id.  The letter did not provide any Plan or claim documents.  Id.

Henderson and Merkel sent another demand for Plan documents and claim files on June 4, 2021.  Id.  Henderson received a response on June 23, 2021 that did not include documents confirming the classification of Henderson's and Merkel's claims.  Id. at 9.  The documents did not reference the request for Merkel's documents.  Id.  Anthem acknowledged Henderson's request to "provide access to the policy documentation that was reviewed in consideration of [Henderson's] previous appeal requests" and advised that documents would be provided "shortly as part of a separate correspondence."  Id.

When no documents were received, Henderson and Merkel sent another request for documents on September 27, 2021.  Id.  Both Henderson and Merkel received responses dated October 7, 2021 advising that all available avenues of appeal had been exhausted and that Anthem would not reconsider its prior determinations.  Id.  The letters also noted that Anthem had "supplied and answered all the requested information" as related to the appeal.  Id.

Henderson and Merkel sent another demand letter on December 7, 2021 requesting Plan documents and underlying claims files.  Id.  No response was provided by Anthem.  Id.

Henderson and Merkel filed their initial Complaint on April 13, 2022 against Anthem, asserting a single count that Anthem had violated section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(A) and seeking production of requested Plan documents, statutory penalties, the reprocessing of any erroneously processed claims, declaratory or injunctive relief to prevent mistreatment of future claims, and attorneys' fees and interest.  Compl. (Dkt. 1).  Henderson and Merkel filed an Amended Complaint on May 24, 2022, adding Chevron Corporation ("Chevron") as a named Defendant.  Am. Compl.  Through the Joint Status Report of March 27, 2023, the Parties advised that all of the Plan documents requested by Plaintiffs had been provided and that Plaintiffs "believe they have now obtained the injunctive relief requested pursuant to Court I of the First Amended Complaint."  Joint Status Rep. at 2 (Dkt. 52).

## LEGAL FRAMEWORK

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim.  Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly ("Twombly"), 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2).  The Court must accept all factual allegations in the complaint and construe the

ORDER - 8

pleadings in the light most favorable to the non-moving party.  See Knievel v.

ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).  The Court need not accept as true

legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The complaint

must set forth sufficient facts, accepted as true, to "state a claim to relief that is

plausible on its face."  Twombly, 550 U.S. at 570.  A claim is facially plausible

when the pleadings allow the Court to draw a reasonable inference that defendant

is liable for the alleged misconduct.  Id. at 556.  The Court should grant the motion

"only where the complaint lacks a cognizable legal theory or sufficient facts to

support a cognizable legal theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521

F.3d 1097, 1104 (9th Cir. 2008).

## DISCUSSION

Plaintiffs' Amended Complaint asserts a single count alleging that

Defendants violated ERISA by not producing requested claim documents.  Am.

Compl. at 10–11.  In the motions to dismiss, Defendants Anthem and Chevron

argue that Plaintiffs lack Article III standing to bring their claims, that Anthem is

not a proper party under ERISA, and that Plaintiffs did not comply with the

requirements of ERISA in requesting claim documents.  Anthem's Mot. Dismiss;

Chevron's Mot. Dismiss.  While the motions to dismiss were under consideration

by the Court, the requested documents were provided to Plaintiffs.  Joint Status

Rep. at 2 (Dkt. 52).  Plaintiffs subsequently filed their motion for summary

judgment, which appears to abandon all claims for relief except for statutory penalties and recovery of litigation costs and attorneys' fees.  Pls.' Mot. Summary J.  Though the central issue of this case—the production of certain documents—is no longer in contention, before the Court can resolve the remaining claims it must address the threshold question of Plaintiffs' Article III standing and whether the Court can consider the terms of the Plan as extrinsic evidence.

## I.      Motion to Strike Extrinsic Evidence

Plaintiffs included in their response to Anthem's Motion to Dismiss a motion to strike the Declaration of Sonia Salazar in Support of Anthem's Motion to Dismiss ("Salazar Declaration") and the summary plan descriptions attached as exhibits to the declaration or, alternatively, to convert Anthem's Motion to Dismiss into a motion for summary judgment and to allow for relevant discovery.  Pls.' Resp. Opp'n Anthem's Mot. Dismiss at 5–8.  Anthem opposes the motion and argues that the Court may consider the documents because they were incorporated by reference in the Amended Complaint or may take judicial notice of the Plan terms.  Anthem's Reply at 2–3.

The Court is generally limited to the four corners of the complaint when considering a Rule 12(b)(6) motion to dismiss.  See Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  Among the limited exceptions to this restriction are (1) documents incorporated by reference in the complaint or that are central to the

plaintiff's claims, the authenticity of which are not contested, and (2) information

subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551

U.S. 308, 322–23 (2007); Swartz, 476 F.3d at 763; Coto Settlement v. Eisenberg,

593 F.3d 1031, 1038 (9th Cir. 2010).

      Plaintiffs' motion seeks the exclusion of the declaration of Sonia Salazar, a

legal specialist for Anthem, and two supporting exhibits, which were included with

Anthem's Motion to Dismiss.  Pls.' Resp. Opp'n Anthem's Mot. Dismiss at 5–8;

see Salazar Decl.; 2014 Chevron Benefits for Retirees Summary Plan Description

("Pre-65 SPD") (Dkt. 15-2); 2017 Chevron Post-65 Retiree Health Benefits

Summary Plan Description ("Post-65 SPD") (Dkt. 15-3).  The first exhibit is titled

"Your Chevron Benefits for Retirees Summary Plan Description" ("Pre-65

Summary Plan Description").  Salazar Decl. at 2; Pre-65 SPD.  The second exhibit

is titled "Chevron Post-65 Retiree Health Benefits Summary Plan Description"

("Post-65 Summary Plan Description").  Salazar Decl. at 2; Post-65 SPD.  Salazar

attests that the Pre-65 Summary Plan Description was applicable to Henderson and

the Post-65 Summary Plan Description was applicable to Merkel.  Salazar Decl. at

2.

      It is unquestioned that the Plan is incorporated by reference into the

Amended Complaint and that the Plan is central to Plaintiffs' claims.  The

Amended Complaint includes dozens of references to the Plan and Plaintiffs'

ORDER - 11

challenge to Defendants' processing of claims as out-of-network under the Plan

provides the factual basis for the single ERISA claim.  See Am. Compl.  The

authenticity of the specific plan summaries included with the Salazar Declaration is

not settled.  Plaintiffs contend that some of the summary documents do not reflect

the 2017 shift from the prior administrator to Anthem.  Pls.' Resp. Opp'n

Anthem's Mot. Dismiss at 6–8 (citing Pre-65 SPD at 77, 160 (identifying United

Healthcare as the "named fiduciary")).  Plaintiffs also assert that the documents

provided by Chevron in May 2022 differ from those accompanying the Salazar

Declaration.  Id. at 7.  Because there is a dispute as to the authenticity of the

documents, the Court cannot consider them under the incorporated by reference

exception.

The Court may still take judicial notice of the documents.  Under Federal

Rule of Evidence 201, a court may take judicial notice of a "fact that is not subject

to reasonable dispute because it: (1) is generally known within the trial court's

territorial jurisdiction; or (2) can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Though the authenticity of the plan summaries is contested, certain relevant facts

are consistent across all versions.  Consistent amongst all the provided documents

is that Chevron is designated as the "Plan Administrator" and that participants are

required to submit written requests for Plan documents to Chevron.  Pre-65 SPD at

ORDER - 12

2, 374, 402, 404; Post-65 SPD at 2, 96, 99–102, 108; Chevron Medical PPO Plan

Summary Plan Description ("May 2022 SPD") at 51, 171–74, 176–77 (Dkt. 17-3);

Chevron Medical Plan Supp. Omnibus Care Plan ("Omnibus Supp.") at 52 (Dkt.

17-4); Chevron Omnibus Health Care Plan at 39–40, 61 (Dkt. 17-5).  Both sets of

plan summaries offered by the Parties provide that Chevron is the proper party

against whom legal actions should be brought.  Pre-65 SPD at 383, 406; Post-65

SPD at 102; May 2022 SPD at 178.  Though the Court will not take judicial notice

of which version of the plan summary is accurate, it will take notice of these

consistent terms that are relevant to resolving the pending dispositive motions.  It

is not necessary, therefore, for the Court to convert the motions to dismiss into

motions for summary judgment or to allow further discovery at this time.

Plaintiffs' motion to strike is denied.

## II.    Article III Standing

Anthem and Chevron move to dismiss Plaintiffs' Amended Complaint for

lack of Article III standing because Plaintiffs have not alleged a concrete injury

that resulted from Defendants' failure to disclose Plan documents.  Anthem's Mot.

Dismiss at 4–5; Chevron's Mem. Supp. Mot. Dismiss Am. Compl. at 3–5 (Dkt.

20).  Plaintiffs contend that they have standing and have pled an injury resulting

from Defendants' failure to produce requested documents and the resulting lack of

information.  Pls.' Resp. Opp'n Anthem's Mot. Dismiss at 8–13; Pls.' Resp. Opp'n

Chevron's Mot. Dismiss at 11.

Federal judicial power is limited by Article III of the U.S. Constitution to the

adjudication of cases and controversies.  U.S. Const. art. III, § 2.  The doctrine of

standing allows courts to maintain this limited role by requiring parties asserting a

claim for relief to establish a personal stake in the outcome of the dispute.  See

East Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 663 (2021).  To establish

standing, the party asserting a claim must demonstrate: (1) that he or she suffered

an injury in fact that is concrete, particularized, and actual or imminent, (2) that the

injury was caused by the defendant, and (3) that the injury would likely be

redressed by the requested judicial relief.  Thole v. U.S. Bank N.A., 590 U.S. __,

140 S. Ct. 1615, 1618 (2020) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555,

560–61 (1992)).  At the pleadings stage, the party asserting the claim bears the

burden of clearly demonstrating each of the required elements.  Spokeo, Inc. v.

Robins, 578 U.S. 330, 338 (2016).

Plaintiffs' Amended Complaint asserts a single count alleging Defendants'

violation of 29 U.S.C. § 1132(a)(1)(A).  Am. Compl. at 10–11.  The Amended

Complaint does not include an express statement of any specific pecuniary or

physical injury that resulted from Defendants' failure to provide the requested

ORDER - 14

documents.  See id.  Rather, Plaintiffs allege that they are entitled to the production

of the requested documents, statutory penalties, and attorneys' fees and costs.  Id.

ERISA and its associated regulations require the administrator of an

employee benefit plan to provide certain plan documents upon request to a plan

participant.  29 U.S.C. § 1024(b); 29 C.F.R. § 2520.104b-1(a).  The statute also

provides a right to sue an administrator that fails to satisfy this obligation.  29

U.S.C. § 1132(a), (c).  A general cause of action to sue for violation of a statutory

right is not alone sufficient to satisfy the injury-in-fact requirement of Article III

standing.  See Thole, 590 U.S. at __, 140 S. Ct. at 1620; Fernandez v. Brock, 840

F.2d 622, 628 (9th Cir. 1988).  "Article III standing requires a concrete injury even

in the context of a statutory violation."  Spokeo, Inc., 578 U.S. at 331.  Plaintiffs

must allege more than a lack of statutory compliance by Defendants to satisfy the

injury-in-fact element of standing.

Plaintiffs' claim for attorneys' fees and costs incurred in pursuing their case

is also insufficient to establish an injury-in-fact.  ERISA allows the Court to award

reasonable attorneys' fees and costs at its discretion.  29 U.S.C. § 1132(g).  This

only creates a concrete stake in the outcome of the case for the attorneys and is not

an injury-in-fact that can be claimed by a party in order to establish standing.  See

Thole, 590 U.S. at __, 140 S. Ct. at 1619.  Furthermore, ERISA's attorneys' fee

provision does not permit recovery of fees incurred during the administrative phase

of the claims process, prior to the filing of litigation.  See Dishman v. UNUM Life Ins. Co. of America, 269 F.3d 974, 987 (9th Cir. 2001).  Because Plaintiffs would not be able to recover those pre-litigation expenses through this case, they cannot provide the needed injury-in-fact for purposes of Article III standing.

In response to Anthem's Motion to Dismiss, Plaintiffs allege that they pled injury in the form of interference with their medical care and continuous erroneous claims procedures.  Pls.' Resp. Anthem Mot. Dismiss at 12.  At no point in the pleadings do Plaintiffs expressly contend that the lack of document production interfered with their ability to receive medical care.  Rather, the Amended Complaint states that "Henderson and Merkel continue to receive necessary medical treatment from the same providers."  Am. Compl. at 9.  It is only in their response that Plaintiffs claim that "Anthem's erroneous and opaque claims procedures" have resulted in some providers refusing service or ending care.  Pls.' Resp. Anthem Mot. Dismiss at 12.

There is a strong presumption against dismissing a case for failure to state a claim when the claim might be salvaged through amendment.  See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997); Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).  Plaintiffs might be able to allege a concrete injury based on prevention of their ability to receive medical care based on Defendants' incorrect processing of claims.

ORDER - 16

However, the sole claim asserted in the Amended Complaint relates to Defendants'

failure to supply requested information, not its mishandling of claims.  Am.

Compl. at 10–12.  The implied connection between Defendants' providing Plan

and claim documents to Plaintiffs and the decisions of individual providers to deny

treatment is too speculative to constitute a concrete injury.  See Lujan, 505 U.S. at

561.  Because Plaintiffs have not alleged an injury, they do not have Article III

standing and Defendants' Motions to Dismiss is granted.

### III.    Anthem as a Proper Party

Anthem argues that Plaintiffs' claim against it fails as a matter of law

because it is not a proper party.  Anthem's Mot. Dismiss at 5–6.  Anthem contends

that under ERISA, only the "plan administrator" is liable for penalties and that it

did not have that distinction.  Id.  Anthem further argues that the provisions of

ERISA providing for production of documents do not cover the claim documents

that Plaintiffs are now seeking.  Id. at 6.  Plaintiffs counter that because Anthem is

an administrator and named fiduciary under the Plan, it is a proper party and that

the language of ERISA does not support the distinction that Anthem draws

between "plan administrator" and "claim administrator."  Pls.' Resp. Anthem's

Mot. Dismiss at 13–16.

Section 1132(c)(1) provides that:

(1) Any administrator (A) who fails to meet the requirements of
paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of

this title, section 1021(f) of this title, section 1025(a) of this title, or section 1032(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1).  The statute defines "administrator" as:

(i) the person specifically so designated by the terms of the instrument under which the plan is operated;
(ii) if an administrator is not so designated, the plan sponsor; or
(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A).

ERISA does not define any subclassifications of administrators, but Anthem contends that U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit Court of Appeals") precedent has held that only a "plan administrator" can be held liable for penalties.  Anthem's Mot. Dismiss at 5–6.  In support of this argument, Anthem cites Cline v. Indus. Maintenance Eng'g & Contracting Co. ("Cline"), 200 F.3d 1223 (9th Cir. 2000), and Moran v. Aetna Life Ins. Co., 872 F.2d 296 (9th Cir. 1989).  Neither of these cases draws the distinction that Anthem suggests.  Though both Cline and Moran use the term "plan administrator," neither case attributes

specific weight to the term "plan" or contrasts a "plan administrator" with any other designation of administrator created under a particular plan.  See Cline, 200 F.3d at 1234–35; Moran, 872 F.2d at 299–300.  In fact, in Cline, the Ninth Circuit Court of Appeals observed that in order to survive a motion for summary judgment, "[a]ppellants were required to go beyond their mere allegations and raise a genuine issue of material fact about whether one or more of the defendants was *an 'administrator.'"*  Cline, 200 F.3d at 1235 (emphasis added).  To read more into these cases would be inconsistent with the use of "any administrator" in section 1132(c)(1).  29 U.S.C. § 1132(c)(1).

Though ERISA does not expressly create obligations for parties assigned the label "plan administrator," it does limit liability to only certain actors.  See Moran, 872 F.2d at 299.  Section 1002(16)(A) creates a hierarchy of which entities qualify as administrators for purposes of the statute.  29 U.S.C. § 1002(16)(A).  The first level in this hierarchy is "the person specifically so designated by the terms of the instrument under which the plan is operated."  29 U.S.C. § 1002(16)(A)(i).  This indicates that the Court should prioritize the intent of the parties to the plan when determining which of multiple entities might be liable under ERISA.

Each version of the Plan documents provided by the Parties identifies Chevron as the "plan administrator" and the entity from which to request information about the Plan and benefits.  Pre-65 SPD at 378, 402, 404; Post-65

SPD at 93, 96–99, 101; May 2022 SPD at 51–52, 171–72, 176–78; Chevron

Omnibus Health Care Plan at 39–40, 62.  Chevron is also designated as the

"appropriate party to sue for all Chevron benefit plans."  Pre-65 SPD at 406; Post-

65 SPD at 104; May 2022 SPD at 176–78; Omnibus Supp. at 52.  The Chevron

Omnibus Health Care Plan and the Chevron Medical Plan Supplement A to the

Omnibus Care Plan provided to the Court by Plaintiffs, go further in defining the

claims administrator to "not be deemed to be the 'administrator' . . . as defined by

ERISA."  Chevron Omnibus Health Care Plan at 62; Omnibus Supp. at 52.  The

Plan language makes clear that the under the Plan, Chevron, not Anthem, carries

the obligations of administrator for purposes of ERISA.

Plaintiffs argue that Anthem should be liable for penalties under ERISA

because Anthem exerted actual control over documents related to Plaintiffs'

specific medical claims.  Pls.' Resp. Anthem Mot. Dismiss at 15–18.  Even when a

third-party makes an administrative determination and maintains the related

documents, ERISA does not shift the production obligation away from the

administrator.  See Sgro v. Danone Waters of N. Am., Inc., 532 F.3d 940, 945 (9th

Cir. 2008); see also Jones v. UOP, 16 F.3d 141, 144 (7th Cir 1994) ("The statute is

plain: if a plan administrator is designated in the plan instrument, that is who has

the statutory duty to respond to requests for information in timely fashion under

threat of monetary penalty if he fails to do so."); Cmty. Hosp. of Monterey

ORDER - 20

Peninsula v. Aetna Life Ins. Co., 2020 WL 7389010, at *8 (N.D. Cal. Jun. 26, 2020) (holding that only the plan administrator may be held liable for penalties, even when the plan designates a different party as a claim administrator.).  In such cases, the administrator must simply take the additional step of acquiring the needed documents from the third-party to satisfy the production request.  See Sgro, 532 F.3d at 945.  Because ERISA only creates a remedy against the administrator as the statute defines that term, Anthem is not a proper party to the asserted claim and Anthem's Motion to Dismiss is granted.

## IV.   Whether Plan Documents were Requested from Chevron in Accordance with 29 U.S.C. § 1024(b)(4)

Chevron argues that Plaintiffs cannot assert a claim against Chevron because they did not satisfy ERISA's requirements for requesting documents.  Chevron's Br. at 5–11.  Specifically, Chevron asserts that Plaintiffs failed to make a written request to Chevron and that Plaintiffs now seek documents that Chevron is not obligated to provide under 29 U.S.C. § 1024(b)(4).  Id. at 5–10.  Chevron further contends that Plaintiffs suffered no prejudice because Plan documents were provided within 30 days of Plaintiffs filing the original complaint.  Id. at 10–11.  In response, Plaintiffs argue that the requirement for a written request was satisfied by the multiple written requests made to Anthem because Chevron received notice of at least one of the requests and was jointly and severally liable.  Pls.' Resp. Opp'n Chevron's Mot. Dismiss at 11–12.  Plaintiffs also contend that 29 U.S.C.

§ 1024(b)(4) should not be read as narrowly as Chevron urges and that Plaintiffs are entitled to all documents relevant to the denial of their claims.  Id. at 4–12.

Section 1024(b)(4) of Chapter 29 states that: "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  In order to sufficiently plead a complaint for statutory penalties under sections 1024(b)(4) and 1132(c), a plaintiff must allege that a written request was made for one of the documents enumerated under the statute and that the requested document was not provided.  See Rodriquez v. Prudential Ins. Co., 2019 WL 1040406, at *3 (W.D. Wash. Mar. 5, 2019); Anderson v. Sun Life Assur. Co., 2012 WL 5392268, at *4 (Dist. Ariz. Nov. 5, 2012); Serpa v. SBS Telecomm., Inc., 2004 WL 3204008, at *3 (N.D. Cal. Dec. 8, 2024).

### A.    Written Request

Chevron argues that Plaintiffs never made a written request for documents in accordance with the Plan and ERISA.  Chevron's Br. at 6–9.  Plaintiffs contend that the multiple requests made to Anthem should be deemed written requests to Chevron because "[Chevron] is jointly and severally liable for the errors, omissions, and failures of Anthem" and Chevron was made aware of at least one of

the requests.  Pls.' Resp. Opp'n Chevron's Mot. Dismiss at 11–12.  Plaintiff further

argues that the Amended Complaint should be treated as a formal written request

for documents.  Id. at 12–13.

     29 U.S.C. § 1024(b)(4) makes production of documents by the

"administrator" contingent on a "written request of any participant or beneficiary."

29 U.S.C. § 1024(b)(4).  The Plan documents provided to the Court by Plaintiffs

and Anthem instruct that information about the Plan and benefits may be obtained

by writing to the Plan administrator, identifying Chevron as the Plan administrator,

and providing contact information for Chevron.  Pre-65 SPD at 378, 402, 404;

Post-65 SPD at 93, 96, 101; May 2022 SPD at 51–52, 171–72, 176–78; Chevron

Omnibus Health Care Plan at 39–40, 62.  Plaintiffs' Amended Complaint includes

multiple allegations that Plaintiffs, their counsel, or Labor made requests for Plan

documents of Anthem, but it does not indicate that a request for documents was

sent to Chevron as required under the Plan.  See Am. Compl. at 6, 8–10.

     Plaintiffs argue that providing written requests to Anthem should have been

sufficient because of the relationship between Defendants and that Chevron

became aware of the request at some stage.  Pls.' Resp. Opp'n Chevron's Mot.

Dismiss at 11–13.  Plaintiffs have provided no support for their conclusory

allegation that Defendants are jointly and severally liable and that knowledge of

the requests can be imputed between Anthem and Chevron.  The earliest

acknowledgement provided by Plaintiffs of Chevron's awareness of the document requests is the cover letter dated April 28, 2022 that accompanied copies of the Chevron Medical PPO Plan Summary Plan Description; Chevron Medical Plan Supplement to the Omnibus Health Care Plan; and Chevron Omnibus Health Care Plan.  Id. at 12; see also Chevron's April 28, 2022 Letter (Dkt. 17-2); May 2022 SPD; Omnibus Supp.; Chevron Omnibus Health Care Plan.  Plaintiffs have not identified evidence of Chevron's knowledge of the request before Plan documents were provided.

Plaintiffs contend that even if no written request was made prior to the filing of this case, the Amended Complaint should satisfy ERISA's requirements.  Pls.' Resp. Opp'n Chevron's Mot. Dismiss at 12–13.  The Amended Complaint was served on Chevron on May 25, 2022.  Am. Compl.; Affidavit Serv. (Dkt. 16). Even if this met the elements of a document request under ERISA, it was not directed to any of the addresses provided for Chevron as the Plan administrator under the Plan.  Compare Affidavit Serv. (Amended Complaint was served on CSC Lawyers Incorporating Services) with Pre-65 SPD at 378, 402, 404, 406 (providing addresses for plan administrator and for service of legal claims); Post-65 SPD at 93, 96–97, 99 (same); May 2022 SPD at 51–52, 171–72, 176–78 (same). The Amended Complaint was also filed subsequent to Chevron providing Plan documents.

ORDER - 24

### B.   Documents Requested

In the Amended Complaint, Plaintiffs allege that they made requests for an explanation of benefits, claim files, and Plan documents.  Am. Compl. ¶¶ 30, 32, 35, 36, 40, 42 at 8–10.  Chevron argues that 29 U.S.C. § 1024(b)(4) does not require production of explanations of benefits, claim files, or other documents concerning specific claims.  Chevron's Br. at 9.  Plaintiffs counter that such a limitation would be inconsistent with the statutory language of ERISA and deprive Plaintiffs of their right to receive a "full and fair" review of their benefits decision.  Pls.' Resp. Opp'n Chevron's Mot. Dismiss at 4–11.

Section 1024(b)(4) provides, in relevant part, that "[t]he administrator shall, upon written request of any participant or beneficiary, *furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated*."  29 U.S.C. § 1024(b)(4) (emphasis added).  ERISA's regulations additionally provide:

> The administrator of an employee benefit plan covered by Title I of the Act must disclose certain material, including reports, statements, notices, and other documents, to participants, beneficiaries and other specified individuals.  Disclosure under Title I of the Act generally takes three forms.  First, the plan administrator must, by direct operation of law, furnish certain material to all participants covered under the plan and beneficiaries receiving benefits under the plan (other than beneficiaries under a welfare plan) at stated times or if certain events occur.  Second, the plan administrator must furnish certain material to individual participants and beneficiaries upon their request.

Third, the plan administrator must make certain material available to participants and beneficiaries for inspection at reasonable times and places.

29 C.F.R. § 2520.104b-1(a).  Because neither the statute nor regulation expressly references claim documents, the question before the Court turns on the catch-all language of "other instruments under which the plan is established or operated" and "certain material."  29 U.S.C. § 1024(b)(4); 29 C.F.R. § 2520.104b-1(a).

The Ninth Circuit Court of Appeals has limited section 1024(b)(4)'s use of "other instruments under which the plan is established or operated" to only "documents that are similar in nature to the documents specifically listed in [the section]."  Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Retirement Plan, 72 F.3d 686, 690–91 (9th Cir. 1995) (en banc); Jones v. Life Ins. Co. N. Am., 716 Fed. App'x 584, 587 (9th Cir. 2017) (holding that 29 U.S.C. § 1024(b)(4) did not require production of the administrative record). Other circuits have adopted a similar interpretation of the statute.  See Bd. Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 142–44 (2d Cir. 1997) ("29 U.S.C. § 1024(b)(4) was meant to refer to formal documents that govern the plan, not to all documents by means of which the plan conducts operations."); Murphy v. Verizon Commc'ns, Inc., 587 Fed. App'x 140, 142–44 (5th Cir. 2014) ("We agree with the majority of the circuits which have construed Section 104(b)(4)'s catch-all provision narrowly so as to apply only to formal legal

documents that govern a plan."); <u>Ames v. Am. Nat. Can Co.</u>, 170 F.3d 751, 758–

59 (7th Cir. 1999) ("We agree with our sister circuits that the latter interpretation

would make hash of the statutory language, which on its face refers to a specific

set of documents: those under which a plan is established or operated.  If it had

meant to require production of all documents relevant to a plan, Congress could

have said so."); <u>Williamson v. Travelport, LP</u>, 953 F.3d 1278, 1294 (11th Cir.

2020) (holding that section 1024(b)(4) requires production only of documents that

are "formal or legal documents under which a plan is set up or managed." (internal

quotation omitted)).  The types of documents listed in the statute—plan summaries,

plan descriptions, annual reports, terminal report, the bargaining agreement, trust

agreements, and contracts—all either provide rights and obligations to plan

participants or govern the administration and management of a plan.  <u>See</u> 29

U.S.C. § 1024(b)(4).  These are of a distinctly different character than documents

related to individual claim decisions.

     Plaintiffs argue that adopting a narrow reading of section 1024(b)(4) would

result in depriving Plaintiffs of their ability to receive a "full and fair" review of

their benefits decisions.  Pls.' Resp. Chevron Mot. Dismiss at 4–11.  Plaintiffs have

only asserted claims under 29 U.S.C. § 1132(a)(1)(A) and (c)(1), however, which

provide a cause of action against an administrator's refusal to provide Plan

documents.  Am. Compl. at 1, 10–11; 29 U.S.C. § 1132(a)(1)(A), (c)(1).  Plaintiffs

have not brought a claim challenging a claim decision or the denial of a benefit under 29 U.S.C. § 1132(a)(1)(B).  <u>See</u> 29 U.S.C. § 1132(a)(1)(B).  ERISA's disclosure requirement under section 1024(b)(4) and the associated civil penalties extend only to the set of documents contemplated by the statute.  Plaintiffs would not be deprived of obtaining claim related documents within the context of another ERISA provision or through normal discovery in a properly brought claim challenging the denial of a benefit.  In the context of the claims asserted in this case, Plaintiffs are not legally entitled to documents beyond those listed in section 1024(b)(4) or documents of a similar character related to the administration of the Plan or the rights of its parties.  Because Plaintiffs did not make a written request to Chevron for Plan documents and now seek production of documents not covered by 29 U.S.C. § 1024(b)(4), Chevron's motion to dismiss is granted.

### V.    Attorneys' Fees and Costs and Civil Penalties

In their motion for summary judgment, Plaintiffs seek the recovery of attorneys' fees, costs, and statutory civil penalties.  Pls.' Mot. Summary J.; Pls.' Mem. Supp. Mot. Summary J. Attorneys' Fees Costs ("Pls.' Mot. Summary J. Br.") (Dkt. 53-1).  Under ERISA, the Court may, at its discretion, award reasonable attorneys' fees and costs to either party.  29 U.S.C. § 1132(g)(1).  Before the Court may award fees and costs, a party must demonstrate "some degree of success on the merits."  <u>Hardt v. Reliance Standard Life Ins., Co.</u>, 560

U.S. 242, 255 (2010).  An administrator may also be liable for civil penalties for its

failure to meet its obligation to provide required documents.  29 U.S.C.

§ 1132(c)(1).

Plaintiffs contend that they have prevailed on their claims because

Defendants provided the requested documents after the commencement of this

litigation and are now entitled to attorneys' fees, costs, and statutory penalties.

Pls.' Mot. Summary J. Br. at 6–13.  Plaintiffs' lack of Article III standing is fatal to

their claims for fees, costs, and penalties because the Court does not have the

authority to consider the question.  Even if standing did exist in this case, Plaintiffs

could not be deemed to have prevailed on the merits of their claim when no claim

ever existed.  Plaintiffs' Motion for Summary Judgment is denied.  Because Article

III standing does not exist, Anthem's cross-motion for summary judgment is also

denied.

**ORDER**

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

(1)     Plaintiffs' Motion to Strike Extrinsic Evidence, or Alternatively,

Allow Time to Conduct Relevant Discovery Pursuant to Federal Rules

of Civil Procedure 12(d) and 56(d) (Dkt. 17) is DENIED.

(2)     Anthem's Motion to Dismiss Plaintiffs' Amended Complaint (Dkt.

15) is GRANTED.

(3)    Chevrons' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt.

19) is GRANTED.

(4)    Plaintiffs' Motion for Summary Judgment and Attorneys' Fees and

Costs (Dkt. 53) is DENIED.

(5)    Anthem's Cross-Motion for Summary Judgment (Dkt. 62) is

DENIED.

(6)    All claims in this case are DISMISSED.

DATED: April 29, 2024

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

---

\* Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.

ORDER - 30